UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------

UNITED STATES OF AMERICA

      vs.

Case No. 5:24-CR-224 (BKS)

WILLIAM FUTRELL,

      Defendant.

-----------------------------------------------------------

## DEFENDANT'S SENTENCING MEMORANDUM

The Defendant submits the following for the Court's consideration at sentencing, currently scheduled for October 28, 2024.

### The Presentence Report and Guidelines Calculation

Mr. Futrell and the government entered into a plea agreement pursuant to Fed. R. Crim. P Rule 11(c)(1)(C), agreeing that a sentence of 262 months' imprisonment is an appropriate disposition. That term was tied to the guidelines and represents a sentence within the guideline range. *See* PSR par. 100. The Defendant obviously does not contest that sentence and asks that the Court accept the plea agreement and impose the agreed upon term of imprisonment. It is worth observing, however, that the guideline at issue has been widely criticized, in this Circuit and others, as lacking an empirical basis, and because "many of the § 2G2.2 enhancements apply in nearly all cases." *United States v Dorvee*, 616 F.3d 174, 186 (2d Cir 2010); *see United States v Grober*, 624 F.3d 592, 603 (3d Cir 2010)(Noting that "numerous district courts across the country similarly found § 2G2.2 flawed, *see, e.g., United States v. Diaz*, 720 F. Supp. 2d 1039, 2010 U.S. Dist. LEXIS 65979, 2010 WL 2640630 (E.D. Wis.

2010) (collecting cases); *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009); *United States v. McElheney*, 630 F. Supp. 2d 886 (E.D. Tenn. 2009); *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009); *United States v. Phinney*, 599 F. Supp. 2d 1037 (E.D. Wis. 2009).")

## Wil's Background, Character
## And the Impact of His Sentence

Support letters and accompanying family photographs reflect that Wil grew up in a family in which he was clearly loved, and had a childhood filled with friends and activity. The pictures and support letters from his father, mother and stepfather reveal that he was and still is the beneficiary of much parental attention and affection.

Those pictures, however, do not tell the entire story. Wil's parents separated when he was eight years old. There was a great deal of strain in the house prior to the divorce, and the family's split resulted in significant animosity and bitterness between his parents. Their letters reflect that they care deeply for their son, and likely prioritized his well-being. Nonetheless, having to live between two households and in a fractured family in which his parents had little regard for each other obviously took a toll on him. A psychological custody evaluation performed during his parents' matrimonial case reflects a common belief among the many people interviewed for the report "that Wil is very much caught in the middle."

The purpose of this sentencing memorandum is of course not to take the side of either parent, and it is noteworthy that both clearly love and are extremely supportive of Wil. Nonetheless, it would be remiss to not note that Wil's father was identified as having "pervasive mental health" and "an array of emotional" needs, both of which required ongoing professional attention. His father had suffered from his own familial trauma, and those stressors have been passed down to Wil. Like his father, Wil has entertained thoughts of suicide on a number of occasions, and has in fact acted on them on at least one occasion. It would seem likely that unresolved issues from the disintegration of

Wil's family and the emotional chaos and confusion with which he had to deal played no small role in the issues resulting in Wil's prosecution.

Wil has a gentle and polite nature, which is evident in speaking with him. Support letters accompanying this memorandum are revealing regarding Wil's character. His father, Stuart Futrell, provides that:

> William has always been quiet, polite, gentle, and non-argumentative. He has never been aggressive toward anyone. He has always been friendly and trusting, and he has gone out of his way to help others in need.

Wil's mother, Kate Veley, describes him as follows:

> Wil is incredibly intelligent, trusting and loyal, even when others don't deserve that consideration. He has always seen the good in people, and had high aspirations for his life, despite the countless struggles and limitations resulting from his prior conviction. He's the guy always willing to help others, and continues to do that even now, assisting people with writing letters to home, filling out paperwork or simply trying to stay positive. He's the friend everyone would like to have.
>
> Wil learned to be philanthropic at a young age, as together we annually dropped off gifts at the Ronald House, served at my charity auctions, assisted at Make-a-Wish events, helping me fill shoe boxes for kids overseas each year, and so much more. He's always made me incredibly proud as I've watched him interact with families, paying special attention to those who needed it most. That's who he's always been. His interactions with my elderly parents, and his extended family in Buffalo portrayed the man I know him to be, and close friends often said the same.

Wil has a crucial role in the support of both of his parents, particularly as they age, and his incarceration will impact them profoundly. His father is ill, and frankly is unlikely to see Wil again after he is sentenced. Both parents describe how Wil's lengthy incarceration will impact them. Wil's father writes that:

> I have several medical issues and have been disabled since 2012. I expect to lose my ability to walk and to see within the next few years, and William has been instrumental in helping me around the house…. William picked up my groceries from the store and put them away, retrieved the mail, took care of the garbage, washed and dried the laundry, vacuumed the house, took care of the dishes, mowed and trimmed the lawn, shoveled the front porch and driveway, cut my hair, took me to my medical appointments, and picked up my prescriptions from the pharmacy…. Once William is transferred to a federal prison, we will never be able to see each other in person again because I can no longer drive long distances.

Wil's mother Kate provides that:

> For me, [Wil]'s my best friend. He helped me through 14 years of college, cheering me on, and understanding when it sometimes impacted my time with him…. Whether we're touring wineries, going to concerts, taking a walk, playing cards, watching a movie, playing with the cats or taking a weekend away, I have truly enjoyed my son and the person he is.

Both parents observe that Wil has accepted responsibility for his conduct. Wil's mother writes that Wil "has taken full responsibility for his actions and has never shield away from that. His regret is beyond description." Wil's father provides that:

> William has spoken to me about the young people that he has hurt, and he regrets his actions. He understands that he has a disorder and wants therapeutic help. William has often told me that he is sorry for embarrassing his mother and me and that he doesn't deserve us.

## The Offense Conduct

Mr. Futrell admitted receiving pictures of adolescent females in sexually explicit poses. One of the females was 13 years old and the others were between 14 and 17. All of the pictures had been taken by the teens themselves, and only one (V-6) told investigators that she produced specific images at Mr. Futrell's request; the others (with perhaps one exception) sent what the government termed "gallery" images they had previously taken, presumably to send to other individuals. Messages between Mr. Futrell and the females reflect that he sometimes misrepresented his age, but it is noteworthy in mitigation - and without detracting from Mr. Futrell's unqualified acceptance of responsibility - that the images were taken by the females outside of Mr. Futrell's presence (most are believed to be from other states); most apparently had been taken by them on prior occasions; and at least two would have been of legal age under at least New York State law. The victims apparently provided photographs because they believed Mr. Futrell was close in age.

4

**Financial Penalties**

Mr. Futrell faces a sentence of well over 20 years in prison. His sentence, in all frankness, seems grossly disproportionate to his conduct given the discussion above and that Mr. Futrell did not engage in a contact sex offense. The length of incarceration, Mr. Futrell's lack of current and past income and financial resources, the effect of having to bear a significant financial burden while in prison and the lack of demonstrated pecuniary loss to the victims, in addition to other factors, all militate in favor of the court waiving any assessment under 18 USC § 2259A(a). *See* 18 USC §§ 2259A(c); 3553(a); 3572. Further, the Defendant asks the Court to waive the additional special assessment of $5000 under 18 USC § 3014 given Mr. Futrell's indigency. *See* 18 USC § 3014(a).

**Conclusion**

Mr. Futrell asks the Court to sentence him in accordance with the parties' plea agreement, with a special assessment under 18 USC § 3013 of $1000, and restitution to V-7 of $3000, the statutory minimum (although far in excess of V-7's claim). The Defendant requests that the Court waive the financial assessments under 18 USC §§ 2259A and 3014.

Dated: October 14, 2024

Respectfully submitted,

George F. Hildebrandt, Esq.
Attorney for Defendant
Bar Roll No. 505664
220 S. Warren Street, 10th Floor
Syracuse, New York 13202
Tel. 315-434-5656